21885. WILKINS *v.* THE STATE.

DECIDED JANUARY 12, 1932.

*M. B. Eubanks,* for plaintiff in error.
*M. Neil Andrews, solicitor-general, Dean Owens,* contra.

LUKE, J. The indictment in this case charges J. W. Wilkins, alias Flatwheel Wilkins, and Clifford Jones with a violation of the

Penal Code (1910), § 317, in that they did, on May 6, 1930, in Floyd county, Georgia, "unlawfully . . deliver, convey, and cause to be delivered and conveyed to Roy Lindsey, a prisoner lawfully committed and detained in Floyd county jail for an offense against this State, three hack-saw blades, the same being instruments proper to facilitate the escape of said Roy Lindsey. . ."

Red McDermot testified in part as follows: "I was in the county jail on May 6. I know Flatwheel Wilkins—J. W. Wilkins. He was in there at that time. . . I heard Flatwheel tell Clifford Jones to send some hack-saw blades up there. I could not tell the jury what they did say. They said something about some hack-saw blades. He said another fellow would give him the money to get them with; that Gene Grace would. After he told him that, Jones left, and that afternoon, about three or three-thirty, he came back, and brought the hack-saw blades with him. He got the hack-saw blades in the jail by a wire and a stick. . . Jones put the hack-saw blades on a wire, and J. W. pulled them in, and Roy Lindsey taken them off of the wire. . . They waited for about an hour or more, I guess, and then they begun sawing. . . Roy Lindsey was confined in jail too. . ."

Ben McCollum testified in part: "I am jailer of the Floyd county jail. . . I found those hack-saws in the jail, which might have been used to facilitate the escape of any one in there, and the stick and wire. . . Mr. Horton and Mr. Jolly went inside the cages and searched them. He got some of those saws out of Roy Lindsey's bunk. That is the warrant under which Roy Lindsey was held in jail." After swearing that the offices of several persons authorized to hold commitment trials were "something like three blocks from the jail," and that he supposed he could have carried Lindsey "before any of them during the time from the 7th of April to the 6th of May and got a commitment for him," Ben McCollum further testified: "I got Lindsey from the police station, and got that warrant with him. I saw that warrant before yesterday. I had it over at the jail. That warrant was all I had to hold him. I held him under that warrant without carrying him before any magistrate or justice of the peace. I didn't have anything to do with that; I didn't carry him anywhere. . . Shortly after I found these hack-saw blades up there, I had a conversation with Roy Lindsey, and he told me that Clifford Jones brought them

up there, and he said he taken them off of the hook. He said that Wilkins pulled them in. . ."

The State introduced in evidence a "warrant . . charging Roy Lindsey with larceny of an automobile, issued on April 5, 1931, by H. L. Lanham, city recorder of Rome, Ga.," and "the record of Roy Lindsey's conviction of larceny of automobile in Floyd superior court."

Roy Lindsey, sworn as a witness for the defendant, testified in part: "I was in jail on the 6th of May, this year, for taking an automobile. About that time I got some hack-saw blades. Pistol Pete brought some in there when he come in—that is Jewell Overby. I did not get any hack-saw blades from Clifford Jones. I did not get any hack-saw blades from the defendant. He did not help me get any hack-saw blades. . . No saws ever came in or was handed out over wire. I plead guilty to trying to escape. I did not have a talk with Ben McCollum the next day after those saws were found about how these hack-saws got in there. . . I did some sawing on the jail over there. . . We passed letters in and out on that wire. I guess you could have passed hack-saw blades in on it, if we had been a mind to."

Jewell Overby, sworn for the defendant, testified in part as follows: "I was in jail about the 6th of May, this year. I was put in about the 5th. I don't know of Clifford Jones bringing J. W. Wilkins any hack-saw blades up there. I have never seen any hack-saw blades brought in jail there. I know how these hack-saw blades got in jail; I carried them in there in my belt. J. W. Wilkins did not have anything to do with me carrying them in there. He did not have anything to do with them after I carried them in there. He did not help us saw out. . . I have been in this chain-gang down here. . . They put me in jail about the 5th of May. They got me for stabbing a boy. I already had these saws before I got in that trouble. I had them to saw steel with. I was going to saw any steel that got in front of me."

The gist of Clifford Jones's testimony was, that he went to jail to visit some acquaintances there; that he knew J. W. Wilkins; and that he knew nothing about the way in which the hack-saw blades got into the jail. Gene Grace, sworn for the defendant, testified that he knew the defendant, and that "Clifford Jones never at any time came to me to get any money."

The gist of the defendant's statement to the jury was that he knew nothing whatever about any hack-saw blades being brought into the jail; that he "heard them sawing a little on the bars," but did not saw any; and that he was not guilty.

Unquestionably the jury was authorized to believe that the defendant actively participated in conveying to Roy Lindsey hack-saw blades, "the same being instruments proper to facilitate the escape of said Roy Lindsey." On the other hand, it is quite obvious that the defense adduced evidence which, if believed by the jury, warranted the conclusion that the defendant took no part whatever in conveying the hack-saw blades to Lindsey. The jury's finding in favor of the State as to this issue of fact is, of course, conclusive so far as this court is concerned.

It is inferable from the record in this case that Roy Lindsey was never brought before any committing officer as required by the Penal Code (1910), § 920. Indeed, counsel for the State practically concedes this in his brief. Counsel for the movant contends that, since Roy Lindsey had not "been lawfully committed to jail," his "detention was illegal, and he had a right to escape, and no one aiding him in what he had a right to do could be guilty of any offense."

Section 317 of the Penal Code (1910) reads: "If any person shall aid or assist a prisoner lawfully committed or detained in jail for an offense against this State, or under any civil process, to make his escape from jail, whether such escape be actually effected or not, or if any person shall convey or cause to be delivered to such prisoner any disguise, instrument, or arms, proper to facilitate the escape of such prisoner, he shall be punished by confinement and labor in the penitentiary for not less than one year nor longer than four years." Section 920 of the Penal Code (1910) reads: "Every officer arresting under a warrant shall exercise reasonable diligence in bringing the person arrested before the person authorized to examine, commit, or receive bail."

We think that it would be a strained and a dangerous construction of section 317, supra, to hold that a person could not be convicted under it unless the person whose escape it was sought to effect had been "committed" to jail. Obviously a person may be legally detained in jail without first having been brought before a committing officer. Indeed, the very section we are considering

recognizes that one may be held in jail under a civil process. Again, since the right to be brought before a committing officer is primarily for the benefit of the accused, no reason appears why this right could not be waived. We decline to hold that a person arrested under a lawful warrant charging him with a felony is illegally detained in jail because he was not "committed," and that one who "shall convey or cause to be delivered to such person" instruments or arms proper to facilitate his escape is not subject to the provisions of section 317, supra. It will be observed that the statute reads: "If any person shall aid or assist a prisoner *lawfully committed or detained* in jail. . ." In this connection, we will say that the ruling in *Welch* v. *State*, 4 *Ga. App.* 388 (61 S. E. 496), which is strongly relied upon by counsel for the plaintiff in error, deals with section 319 of the Penal Code (1910), and is not in point. Before concluding our discussion of the general grounds, it may not be amiss to say that no witness testified that Roy Lindsey ever sought or desired to be brought before a committing officer, or that he was actually denied that right; and Lindsey himself testified at some length in the case.

The first special ground avers that the court erred in failing to charge the jury (without request) that, "if Roy Lindsey was being held in jail for safe-keeping and to await trial only, then said Lindsey had a legal right to escape, and that if he did have such right to escape, this defendant could not be convicted for furnishing him instrumentalities suitable to aid his escape." The second special ground is in this language: "Because the court should have charged the jury that Lindsey could not have been lawfully committed to jail upon a warrant issued by the recorder, and lawfully held in jail under such warrant without any commitment or lawful process." The third special ground reads: "Because the court, in charging the jury on the question of what constituted lawful confinement and commitment of Lindsey, should have charged the jury that Lindsey could not have been lawfully confined in jail so as to make escape from jail criminal merely for the purpose of safe-keeping and for trial." What has been said in regard to the general grounds of the motion for a new trial sufficiently indicates our opinion that there is no merit in any of the foregoing special grounds; and the last ground in the motion for a new trial is merely an elaboration of the general grounds.

For no reason assigned did the trial judge err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*